ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2010 AUG 31 PM 3: 43

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EDWIN SERNA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-084 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate currently incarcerated at McRae Correctional Facility[1] ("McRae") in McRae, Georgia, has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Respondent has filed his response to the petition. (Doc. no. 6.) Thereafter, Petitioner also filed a reply brief (doc. no. 8), and Respondent filed a reply to Petitioner's reply brief (doc. no. 12). For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

**I.    BACKGROUND**

    **A.    Procedural Background**

Petitioner is serving a sentence of 151 months of imprisonment for Conspiracy to

---

[1]McRae is a private correctional facility operated by the Corrections Corporation of America ("CCA") under contract with the Bureau of Prisons.

Distribute Narcotics. (Doc. no. 6, Ex. 1.) He is scheduled for release on February 14, 2014, via good conduct time credit. (Id.) Petitioner filed this § 2241 petition contending that he has impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration that consisted of boycotting three specific meals served at McRae, in violation of prison regulations. (See generally doc. no. 1.) Petitioner claims in his petition that the disciplinary procedures violated his due process rights because he was denied the opportunity to present documentary evidence when his request for the meal monitoring data was denied, and because there was no evidence that he committed the act as charged in the incident report. (See id. at 2-3.) Petitioner also attempts to assert various causes of action under the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, the Free Exercise Clause and the Establishment Clause of the First Amendment, and the Eighth Amendment. (See id. at 11-27.) As relief, Petitioner requests restoration of the 27 days of GCT and expungement of the disciplinary report from his record. (Id. at 27.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within twenty (20) days of the date of service. (Doc. no. 4.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing; that he failed to exhaust all remaining claims; and that even if he had exhausted his remaining claims, that they are not cognizable in this habeas petition. (See generally doc. no. 6.)

### B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided kosher meals. (Doc. no. 6, Ex. 4, ¶ 6.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009. (Id. ¶¶ 6, 7.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 7.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 8 and Attach. 1.) Respondent maintains that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's Special Investigation Services ("SIS"). (Id. ¶ 10.) Respondent further states that the SIS investigation of 119 alleged inmate participants was finalized by Respondent on February 23, 2009. (Id.) On February 26, 2009 an incident report was completed charging Petitioner with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Id. ¶ 11.) A copy of the incident report was provided to Petitioner. (Id., Ex. 4, ¶ 10 and Attach. 2.) Also on that day, an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id. ¶ 11 and Attach. 2.) The investigator then proceeded to question Petitioner about his involvement in the suspected boycott. (Id. ¶ 13 and Attach. 2, §§ 26, 27.) Respondent provides that the investigator

3

concluded, based on the report from the reporting staff member and the investigation completed by the SIS department, that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. ¶ 13 and Attach. 2, §§ 26, 27.)

The UDC held a hearing on February 27, 2009, at which Petitioner appeared and provided a statement maintaining that he did not participate in a Group Demonstration. (Id. ¶ 15.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id. ¶ 15 and Attach. 2, §§ 17-19.)

On February 27, 2009, the UDC also provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id. ¶ 16 and Attachs. 4, 5.) Petitioner chose to exercise his rights, and at the hearing on April 21, 2009, Petitioner's staff representative provided a statement on his behalf; Petitioner was also provided an opportunity to make a statement himself and present documents, but he chose not to call any witnesses. (Id. ¶ 18 and Attach. 6, § III.)

On April 21, 2009, the DHO issued his written decision. In making his decision, Respondent explains that the DHO considered the incident report and investigation, the meal monitoring records from McRae, the January 29th interview questionnaire, and a memorandum from the Assistant Chief of Security. (Id. ¶¶ 17-19 and Attach. 6, § III (D).) According to the DHO's Report, the meal monitoring records indicated that Petitioner normally received all of his meals, but between January 22, 2009, and January 29, 2009,

Petitioner did not receive the meals identified as the target of the Group Demonstration.[2] (Id.) Furthermore, the DHO noted that when questioned by his Unit Manager why he participated in the group demonstration, Petitioner responded, "I do not like the menu"; and when asked who encouraged him to participate in the Group Demonstration, Petitioner gave no response. (Id., Attach. 6.) The DHO also asked Petitioner why he told the UDC hearing officer on February 26, 2009, that he did not usually eat breakfast, but he ate the other meals; the DHO noted that his meal monitoring records indicated that he normally ate all of his meals. (Id.) Petitioner responded, "Maybe I go to eat maybe I don't." (Id.) In addition, the memorandum written by the Assistant Security Chief indicated that he monitored the serving of the Kosher meal at noon on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner).[3] (Id.) Furthermore, the meal monitoring records

---

[2]Respondent clarified that the Meal Monitoring Review Records not only consist of results of the scanned inmate identification cards before each meal, but also include the observations of an officer who personally observed which inmates received their meals and ate them or received their meals and threw them away. According to Respondent, a review of Petitioner's Meal Monitoring Review Records indicated that an officer observed Petitioner at the January 29th noon meal scan the card, but he ultimately discarded the food tray. (Doc. no. 12, p. 5 and Ex. 9.) Importantly, nowhere does Petitioner claim that he ate any of the meals that were the target of the Group Demonstration. Rather, Petitioner argues that the Meal Monitoring Review Records would show that contrary to Respondent's representation, Petitioner did not regularly receive his meals. (See, e.g., doc. no. 8, p. 12.) Equally noteworthy is Petitioner's argument that the Assistant Security Chief was mistaken in his observation that only one inmate who received the Kosher diet participated in the noon January 29, 2009 meal. (Id. at 5.) As evidence that the Assistant Security Chief was mistaken, Petitioner alleges that inmates "German," "Delgado," and "Rincon" ate the January 29th noon meal. (Id.) However, nowhere does Petitioner argue that he participated in that meal.

[3]This one inmate did not receive an incident report. (Doc. no. 9, Ex. 9, § V.)

5

indicate that Petitioner normally received all of the his meals during the review period with the exception of the meals that were the target of the Group Demonstration. (Id.)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. § VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id. § VII.) With those facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

Petitioner claims that his due process rights were violated during the course of the events described. Specifically, Petitioner argues that the disciplinary procedures violated his due process rights because he was denied the opportunity to present documentary evidence when prison officials refused his request for the meal monitoring data; Petitioner also claims his due process rights were violated because there was no evidence that he committed the act as charged in the incident report. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he fails to provide a basis for relief. (See doc. no. 6, pp. 11-14.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply

6

of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is

7

required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on February 26, 2009, Petitioner was advised of his rights and was provided with a copy of the incident report notifying him of the charges against him. (Doc. no. 6, Ex. 4, Attach. 2.) The following day, the UDC referred the matter to the DHO for a hearing that was held on April 21, 2009. (Id.) Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to have a staff representative provide a statement on his behalf and present evidence. (Id., Attach. 4.) Indeed, as noted in the DHO Report, Petitioner chose to exercise these rights and was represented by as staff representative. (Id., Attach. 6, § III.) After Petitioner exercised his rights at the disciplinary hearing, the DHO issued a detailed report explaining the evidence upon which he relied in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id. § IV.) The DHO Report indicates that a copy was delivered to Petitioner on May 1, 2009, and Petitioner does not contest that he received this report. (Id. § IX.) In fact, Petitioner attached a copy of the DHO Report to his § 2241 petition. (See doc. no. 1, Ex. 4.) Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the DHO, as well as the meal monitoring data and memorandum from Assistant Chief of

Security, demonstrate that Petitioner did not eat the meals that were identified as the target of the Group Demonstration.

To the extent Petitioner argues that the disciplinary procedures violated his due process rights because he was denied the opportunity to present documentary evidence when his request for the meal monitoring data was rejected, his argument fails. First, Petitioner was notified that if he wanted those documents, he could file a request pursuant to the Freedom of Information Act ("FOIA"). (Doc. no. 12, Ex. 7.) Respondent notes that as of the date of his reply brief, Petitioner had not filed a FOIA request for this information. (Id. at 2.) Thus, Petitioner has not been denied access to the documents. Rather he chose not to avail himself of the procedure required to obtain the documents. Additionally, to the extent Petitioner sought documents pertaining to other inmates, BOP policy does not allow Petitioner to have access to other inmates' disciplinary matters. (Id. (citing Ex. 8).)

Furthermore, to the extent Petitioner argues that the documents should have been provided to him pursuant to Brady v. Maryland, 373 U.S. 83 (1963), this argument also fails. Petitioner relies on Brady for the proposition that he is entitled to exculpatory evidence from Respondent, but notably, Brady is a criminal case.[4] As previously mentioned, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Indeed, the Eleventh Circuit noted, without deciding the issue, that it has never held that the principles of Brady extend to prison disciplinary hearings. Kenney v.

---

[4]The Brady court held that the defendant's due process rights were violated because he was entitled to exculpatory evidence that had been suppressed by the government. Brady, 373 U.S. at 87.

9

Barron, 239 F. App'x 494, 495 (11th Cir. 2007). Finally, although Petitioner claims that the meal monitoring data would somehow show that he did not participate in the Group Demonstration, this argument is unavailing because Petitioner has acknowledged that he did not participate in the meals (doc. no. 8, Ex. 4, Attach. 2, § 24 and Attach. 6, § V).

Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

## B.  Remaining Claims

As noted above, Petitioner also attempts to raise various claims under the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, the Free Exercise Clause and the Establishment Clause of the First Amendment, and the Eighth Amendment. The crux of Petitioner's argument concerning these claims is that he, as well as other inmates, have a right to be provided with food "sufficient to sustain them in good health." (Doc. no. 1, p. 14.) As such, Petitioner asserts that the Bureau of Prisons should prepare food in a manner that is consistent with the dictates of the Jewish and Muslim religions; in other words, the Bureau of Prisons should provide Kosher meals. (Id. at 15, 18.) Notably, the sole function of habeas corpus, however, "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979), *revised*

*by* 596 F.2d 658 (5th Cir. 1979).[5] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claims listed above challenge the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition. Indeed, Petitioner concedes in his reply to Respondent's response that his current petition is not the proper vehicle to present his remaining claims. (Doc. no. 8, p. 2.) Accordingly, Petitioner's remaining claims should be dismissed for failure to allege grounds on which § 2241 relief may be granted.

That said, at least as to Petitioner's equal protection claim, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, 162 F. App'x 813, 815 (10th Cir. 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241 without assessing whether claim was exhausted). Notably, however, even if Petitioner were allowed to proceed with his remaining claims, those claims would still be subject to the exhaustion requirement and, as addressed *infra*, Petitioner has not satisfied that requirement.

The failure of a prisoner to exhaust his administrative remedies prior to filing a complaint or petition in federal court bars a court from granting relief under such a complaint or petition. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 92 (2006); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

11

F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Moreover, mere perceived futility of exhaustion does not excuse a prisoner from pursuing administrative relief before filing a civil complaint in federal court. E.g., Higginbottom v. Carter, 223 F.3d 1260, 1261 (11th Cir. 2000) (*per curiam*) (stating that "the exhaustion requirement [in a prisoner civil rights case] cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile"); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (recognizing exhaustion requirement in relation to bringing § 2241 petition and noting any exception to exhaustion would apply only in "extraordinary circumstances"); cf. Jaimes v. United States, 168 F. App'x 356, 359 (11th Cir. 2006) (*per curiam*) (observing that whether habeas petitioner "may even assert a futility exception to the [exhaustion] requirement is questionable"). Here, although Petitioner in his reply simply states that he has exhausted his Eighth Amendment claims, Petitioner's grievance record (doc. no. 8, Ex. 2), reflects otherwise.[6] Thus, even if Petitioner had brought the instant claims in a civil rights complaint or if his claims were cognizable under § 2241, he would not be entitled to relief because of his failure to exhaust his administrative remedies.[7,8]

---

[6]Petitioner concedes that he did not exhaust his administrative remedies as to the claims he attempted to raise under the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Person's Act, and the Free Exercise Clause and the Establishment Clause of the First Amendment. (Doc. no. 8, p. 2.) Petitioner's equal protection claim is addressed in note 8 *infra*.

[7]Even if Petitioner had exhausted his administrative remedies before filing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), he still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available).

[8]Assuming for the sake of argument that Petitioner's equal protection claim is properly brought in a § 2241 petition, as explained below, this claim still fails to provide a

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 31st day of August, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

basis for the requested relief. The crux of Petitioner's argument is that he was one of the "few" inmates who was sanctioned with a loss of 27 days of GCT. (Doc. no. 1, pp. 19-21.) However, to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Petitioner cannot show that he was treated differently from other similarly situated inmates, as the record establishes that similarly situated inmates that participated in the Group Demonstration received the same discipline as Petitioner. (See doc. no. 6, Ex. 6.) Therefore, Petitioner's equal protection argument fails.